**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CHRISTOPHER M. SPIEHLER**                            **CIVIL ACTION**

**VERSUS**                                             **NO. 16-3971**

**DARYL VANNOY, WARDEN**                               **SECTION: "H"(3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Christopher M. Spiehler, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola Louisiana.  On July 21, 2010, Spiehler was indicted in the Parish of St. Tammany for one count of aggravated rape (count one), one count of aggravated kidnapping of a child (count two), and multiple counts of pornography involving juveniles (counts three through twenty-two).[1]  Spiehler was tried before a jury on September 26 and 27, 2011, and was found guilty as charged on counts one and three through twenty-two, and found guilty of the lesser

---

[1] State Rec. Vol. 1 of 9, Bill of Indictment, 7/21/10.

included offense of simple kidnapping on count two.[2]  Spiehler's motion for new trial was denied.[3]

The court sentenced Spiehler to life imprisonment at hard labor without the benefit of probation,

parole or suspension of sentence as to the aggravated rape conviction, five years imprisonment at

hard labor without the benefit of probation, parole or suspension of sentence as to the simple

kidnapping conviction to run concurrent with count one, and five years on each of the twenty

counts of pornography involving juveniles to run consecutively to each other and to the life

sentence.[4]  Petitioner's motion to reconsider sentence was denied.[5]

Spiehler filed a counseled direct appeal to the Louisiana First Circuit. [6]  Petitioner filed a

pro se supplemental brief.[7]  The court denied petitioner's appeal on September 21, 2012.[8]  In

March 2013, Spiehler filed a writ application to the Louisiana Supreme Court which was denied

on July 31, 2013, without explanation.[9]  Spiehler did not file a writ application with the United

States Supreme Court.

On July 9, 2014, petitioner filed a writ of mandamus with the Louisiana First Circuit Court

of Appeal seeking a ruling on a post-conviction relief application he claimed to have filed on April

30, 2014.[10]  On September 8, 2014, the Louisiana First Circuit denied relief finding, "The records

---

[2] State Rec. Vol. 1 of 9, Jury Verdicts, 9/27/11; Minutes, 9/26/11; Minutes, 9/27/11; State Rec. Vol. 2 of 6, Trial Transcript, 9/26/11; Trial Transcript, 9/27/11; State Rec. Vol. 3 of 9, Trial Transcript (con't), 9/27/11.
[3] State Rec. Vol. 1 of 9, Motion for New Trial, 10/10/11; Sentencing Minutes, 10/13/11; State Rec. Vol. 3 of 9, Transcript, pp. 611-12, 10/13/11.
[4] State. Rec. Vol. 1 of 9, Sentencing Minutes, 10/13/11; State Rec. Vol. 3 of 9, Transcript, 10/13/11.
[5] State Rec. Vol. 1 of 9, Motion to Reconsider Sentence, 11/8/11; Order, 11/15/11.
[6] State Rec. Vol. 4 of 9, Appeal Brief, 2012 KA 0129, 3/5/12.
[7] State Rec. Vol. 4 of 9, Supplemental Brief, 12-KA-0129, 6/4/12 (dated 5/28/12).
[8] State v. Spiehler, No. 2012 KA 0129, 2012 WL 4335872 (La. App. 1st Cir. Sept. 21, 2012); State Rec. Vol. 4 of 9, 1st Cir. Order, 2012 KA 0129, 9/21/12.
[9] State ex rel. Spiehler v. State, 118 So.3d 1124 (La. 2013) (mem.); State Rec. Vol 5 of 9, La. Supreme Court Order, 2013-KH-0548, 7/31/13; Application for Writ, 13 KH 548, 3/12/13 (signed 3/6/13).
[10] State Rec. Vol. 7 of 9, Writ of Mandamus, 2014 KW 1020, 7/10/14 (signed 7/9/14).

of the St. Tammany Parish Clerk's Office reflect that relator was mailed a letter advising him that the district court has not received his application for postconviction relief."[11]

On August 8, 2014, petitioner filed an application for post-conviction relief with the state district court.[12] The state trial court denied petitioner's application as to three of his claims on September 17, 2014, finding petitioner's claims to be without merit.[13] After an evidentiary hearing, the state trial court denied the final claim.[14] The Louisiana First Circuit Court of Appeal denied petitioner's application for supervisory writ finding "Relator only offered conclusory allegations, and the documents attached to this writ do not support his claims for postconviction relief.  See La. Code Crim. P. art. 930.2."[15] The Louisiana Supreme Court denied petitioner's application for review as untimely.[16]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.[17] The state has filed a response arguing that the application is untimely.[18] Petitioner has filed a reply to the state's response in which he attempts to refute the state's argument.[19] For the following reasons, the undersigned finds that petitioner's federal application was in fact untimely.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his

---

[11] State v. Spiehler, No. 2014 KW 1020, 2014 WL 12569915 (La. App. 1st Cir. Sept. 8, 2014); State. Rec. Vol. 7 of 9, 1st Cir. Order, 9/8/14; State Rec. Vol. 6 of 9, Letter, 8/7/14.

[12] State Rec. Vol. 6 of 9, Application for Post-Conviction Relief, signed 8/8/14.

[13] State Rec. Vol. 6 of 9, Trial Court Order, 9/17/14.

[14] State Rec. Vol. 6 of 9, Evidentiary Hearing Transcript, 7/23/15.

[15] State Rec. Vol. 6 of 9, 1st Cir. Order, 2015 KW 1476, 12/18/15; Application for Writ, 2015 KW 1476, 9/24/15 (signed 9/18/15).

[16] State ex rel. Spiehler v. State, 186 So. 3d 649 (La. 2016) (per curiam); State Rec. Vol. 6 of 9, La. Supreme Court Order, 16-KH-0266, 3/14/16.

[17] Rec. Doc. 1.

[18] Rec. Doc. 7.

[19] Rec. Doc. 11.

underlying criminal judgment becomes "final."  28 U.S.C. § 2244(d)(1)(A).  On that point, the

United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging
> a state conviction begins to run on "the date on which the [state] judgment became
> final by the conclusion of direct review or the expiration of the time for seeking
> such review."  28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued
> relief on direct appeal through his state's highest court, his conviction becomes
> final ninety days after the highest court's judgment is entered, upon the expiration
> of time for filing an application for writ of certiorari with the United States Supreme
> Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).  However, "[i]f the
> defendant stops the appeal process before that point," ... "the conviction becomes
> final when the time for seeking further direct review in the state court expires."  Id.
> at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section
> 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct
> review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for
> federal habeas purposes, a necessary part of the finality inquiry is determining
> whether the petitioner is still able to seek further direct review.  See Foreman, 383
> F.3d at 338-39.  As a result, this court looks to state law in determining how long a
> prisoner has to file a direct appeal.  See Causey v. Cain, 450 F.3d 601, 606 (5th Cir.
> 2006); Roberts, 319 F.3d at 693.  Louisiana Supreme Court Rule X, § 5(a) states
> that an application "to review a judgment of the court of appeal either after an
> appeal to that court ... or after a denial of an application, shall be made within thirty
> days of the mailing of the notice of the original judgment of the court of appeal."

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana First Circuit Court of Appeal affirmed petitioner's convictions and

sentences on September 21, 2012.  Accordingly, he had only until Monday October 22, 2012,[20] to

file a Louisiana Supreme Court writ application seeking further direct review.  Because he did not

even sign his Louisiana Supreme Court writ application until March 6, 2013[21], it is evident that he

---

[20] Because October 21, 2012, fell on a Sunday, petitioner's deadline was extended through the following Monday, October 22, 2012.  See La. Code Crim. P. art. 13; La. Rev. Stat. § 1:55.

[21] See State Rec., Vol. 5 of 9, Louisiana Supreme Court writ application in case number 2013 KH 0548, Certificate of Service, p. 8.

could not have given that application to prison officials for mailing prior to that date.  Therefore, even utilizing the state mailbox rule,[22] the application was clearly untimely.

Petitioner claims that, because he had been extradited to Mississippi during the pendency of his direct appeal, he was not advised of the Louisiana First Circuit's denial of his direct appeal until February 2012 and that the Louisiana Supreme Court accepted his March 2012 writ application as timely.  He asserts that his conviction became final on July 31, 2013, the date on which the Louisiana Supreme Court denied his writ application.  Nothing in the record supports petitioner's claim.

It is true that the Louisiana Supreme Court's decision simply stated, "Denied."  However, the court's failure to explain the basis for its ruling does not mean that the court denied the application on the merits rather than because it was untimely.  Quite the contrary, when addressing the same situation in Butler, the United States Fifth Circuit Court of Appeals explained that the application was presumed to have been denied as untimely:

> The Louisiana Supreme Court's 1999 order contains only one word: "denied."  See State v. Butler, 734 So. 2d 1222.  Butler argues that a simple "denied" cannot be based on untimeliness, relying in part on our statement in 2004 that "when the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions."  Grillette v. Warden, 372 F.3d 765, 775 (5th Cir. 2004).  In Grillette, though, we were evaluating solely the practice of the Louisiana Court of Appeal under a rule applicable only to it and not to the state's Supreme Court; we cited only intermediate court opinions for our conclusion.  See id. at 769-70.  Conversely, in a pre-Grillette opinion, we found that a single-word denial order from the Louisiana Supreme Court likely indicated untimeliness and not a merits decision.  Williams v. Cain, 217 F.3d 303, 304, 309 n. 7 (5th Cir. 2000).
>
> Butler also refers to numerous Louisiana Supreme Court orders which specifically stated that the application was "not considered, not timely filed."  See, e.g., State v. Baker, 939 So. 2d 1269 (La. 2006); State v. Shannon, 766 So. 2d 1261 (La. 2000); State v. Jones, 763 So. 2d 586 (La. 2000).  However, those examples

---

[22] Under Louisiana's "mailbox rule," a prisoner's court filing is considered "filed" as of the moment he "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).

do not prove the negative, that the absence of such language when Butler's application was denied means that the merits were reached.

Most persuasive to us, the Louisiana Supreme Court would have violated its own rule if it had considered Butler's petition on the merits. A Louisiana Supreme Court rule requires that an "application seeking to review a judgment of the court of appeals," must be filed within thirty days; it specifies that "[n]o extension of time therefor will be granted." La. Sup. Ct. R. X, § 5(a). While another section of the Rule — Section 5(b) —allows the Supreme Court to extend the time for filings under the subsection "upon proper showing," that applies to narrow categories of applications that do not include cases such as Butler's.

Finally, there is no indication that the state court granted an extension or otherwise waived its own rule as to Butler. Butler did not even request an extension of time to file his late direct review application. He has not claimed that he received a letter from that court allowing a late filing such as did the defendant in Hill v. Cooper, 2007 WL 458207, No. 04-2588 (E.D. La. 2007). We are not aware of any case in which the Louisiana Supreme Court sua sponte extended the amount of time in which to file under Rule X, § 5(a). Contra Hughes, 249 F. App'x at 341 (Hughes requested and received an extension under § 5(b)); McGee v. Cain, 104 F. App'x 989 (5th Cir. 2004) (unpublished) (requested and did not receive an extension under § 5(a)); Hill, 2007 WL 458207 at *2 (requested and did receive an extension-unclear what basis).

We conclude that the Louisiana Supreme Court found Butler's application for further review of his conviction to be untimely.

Bulter, 533 F.3d at 318-19 (footnotes omitted).

Here, nothing in the record supports petitioner's claim that the Louisiana Supreme Court accepted his writ application as timely. In his writ application to the Louisiana Supreme Court, petitioner simply stated that he had been transferred to Mississippi and, when he notified the Louisiana First Circuit he had returned, the First Circuit notified him on February 18, 2013 that a decision had been rendered.[23] There is no documentary evidence that petitioner actually requested an extension or that the Louisiana Supreme Court granted such an extension. Petitioner does not claim that he received a letter from the court allowing a late filing and there is no record of such a letter. The undersigned therefore presumes that the writ application was denied as untimely. As

---

[23] State Rec. Vol. 5 of 9, Writ Application, 2013-KH-0548, p. 3, 3/12/13 (signed 3/6/13).

a result, petitioner's state criminal judgment became final for AEDPA purposes on October 22, 2012, and his federal limitations period commenced on that date. That limitations period then expired one year later on October 22, 2013, unless that period was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Here, petitioner unquestionably had applications pending before the state courts during the applicable one-year period; however, those applications did not entitle him to tolling under § 2244(d)(2) for the following reasons.

The first state application petitioner filed during that period was his untimely direct-review writ application in Case No. 2013-KH-0548. However, the United States Fifth Circuit Court of Appeals has expressly and conclusively held that a petitioner is not entitled to any tolling credit under § 2244(d)(2) for an untimely direct-review filing. As the Fifth Circuit explained, "[u]nder that provision it is only state post-conviction relief proceedings that cause tolling." Butler, 533 F.3d at 318 (emphasis added). Because petitioner's untimely writ application was filed as part of the direct-review proceedings, § 2244(d)(2) is simply inapplicable. Williams v. Cain, Civ. Action No. 14-754, 2015 WL 4394132, at *3 n.13 (E.D. La. July 14, 2015); Young v. Terrell, Civ. Action No. 13-5691, 2014 WL 5040792, at *5 (E.D. La. Oct. 6, 2014); Johnson v. Cain, Civ. Action No. 12-974, 2013 WL 5961101, at *4 (E.D. La. Nov. 7, 2013); Wilson v. LeBlanc, Civ. Action No. 12-2577, 2013 WL 4648474, at *2 (E.D. La. Aug. 29, 2013); Allen v. Tanner, Civ. Action Nos. 11-927 and 11-1601, 2011 WL 4344586, at *2 (E.D. La. Aug. 19, 2011), adopted, 2011 WL 4345081 (E.D. La. Sept. 15, 2011).

Petitioner filed several motions for production of documents in March and August 2013.[24] However, it is clear that such applications for copies of transcripts or other documents are not considered applications "for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence.  Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n.22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).

Petitioner filed a motion for new trial on September 9, 2013 which was denied September 11, 2013.[25]  However, that application did not toll the limitations period because it was not "properly filed."  For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must " 'conform with a state's applicable procedural filing requirements,' " such as timeliness and location of filing.  Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000).  La. Code Crim. P. art. 853(B), in conjunction with La. Code Crim. P. art. 851(3), provides that when a motion for new trial is based upon alleged "new and material evidence", as Spiehler's was, "the motion may be filed within one year after the verdict or judgment of the trial court ...."  The jury rendered its verdict on September 27, 2011.  Petitioner

---

[24] State Rec. Vol. 6 of 9, Motion for Production of Documents, 3/13/13; Motion for Production of Documents, 8/22/13.
[25] State Rec. Vol. 6 of 9, Motion for New Trial, 9/9/13.

filed his motion for new trial in September 2013, nearly two years later.  The motion therefore was not properly filed and did not afford petitioner any tolling under the AEDPA.[26]  Mehmood v. Stephens, No. A–14–CA–747–LY, 2015 WL 4637591, at *2 (W.D. Tex. Aug 3, 2015) (untimely motion for new trial was not "properly filed" and did not toll the statute of limitations), certificate of appealability denied, No. 15-50989 (5th Cir. Mar. 28, 2017); Smith v. Smith, No. 1:09CV132, 2009 WL 6337960, *12 (N.D. Ohio Sept.24, 2009), adopted, 2010 WL 1416994 (N.D. Ohio Apr. 6, 2010) (because petitioner failed to comply with state procedural requirements, his motion for leave to file motion for new trial was "not properly filed for AEDPA tolling purposes").

Petitioner filed a motion to recuse seeking to disqualify the state prosecutor and trial judge in October 2013.[27]  That motion, however, did not toll the limitations period.  Myers v. Terrell, Civ. Action No. 11–0353, 2012 WL 2915502, at *3 (E.D. La. July 17, 2012) (motion to recuse and subsequent appeals of denial of the motion did not toll the federal limitations period).

Petitioner claims that he filed a state post-conviction application on April 30, 2014, and it is, of course, true that he also filed a state post-conviction application on August 8, 2014. However, at both points, the one-year period had already expired, and it is clear that applications filed after the expiration of the federal statute of limitations have no bearing on § 2244(d)(2) tolling determinations.  See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).  Simply put, once the federal limitations period has expired, "[t]here [i]s nothing to toll."  Butler, 533 F.3d at 318.

---

[26] Even if the motion could be considered properly filed, the additional days of tolling it would have provided would not render petitioner's federal petition timely.  Petitioner filed his motion for new trial on September 11, 2013.  The trial court denied it on September 13, 2013, and it would have remained pending for tolling purposes until October 11, 2013, when petitioner did not seek review of the denial of the motion.  He then would have had until November 23, 2013 by which to file his federal petition.  He did not do so.

[27] State Rec. Vol. 6 of 9, Motion to Recuse, 10/28/13 (signed 10/24/13).

Petitioner filed no other applications for "State post-conviction or other collateral review." Therefore, he clearly is not entitled to statutory tolling.

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

In the instant case, petitioner suggests that he is entitled to equitable tolling. For the following reasons, the Court rejects that argument.

Petitioner claims he has been on 23-hour lockdown since January 2012 and must rely on the assistance of inmate counsel. He claims that inmate counsel is unreliable and has provided him "false/inaccurate" information including that the limitations period did not commence until the conclusion of post-conviction review by the state courts.

It is clear that a prisoner's pro se status, lack of legal training, and mere ignorance of the law do not constitute rare and exceptional circumstances warranting equitable tolling. See, e.g., Felder v. Johnson, 204 F.3d 168, 171-72 (5th Cir. 2000); accord Gonzales v. Wilkinson, 269 F. App'x 481, 486 (5th Cir. 2008). Neither a petitioner's "pro se status nor his unfamiliarity with the law suffices as a basis for equitable tolling." Madden v. Thaler, 521 F. App'x 316, 323 (5th Cir. 2013); accord Nelson v. Quarterman, 215 F. App'x 396, 398–99 (5th Cir.2007) ("[A] defendant's

10

pro se status will not excuse an untimely habeas petition."); see also Smallwood v. Cain, 12–2812,

2013 WL 5757663, at *10 (E.D. La. Oct. 23, 2013) ("The fact that Smallwood is not educated in

the law or is reliant upon assistance from inmate counsel on post-conviction does not warrant

equitable tolling.").  Furthermore, ineffective assistance of inmate counsel is also not a basis for

equitable tolling.  Reed v. Keith, Civ. Action No. 13–1505, 2014 WL 940587, at *4 (W.D. La.

March 11, 2014) (citing Martinez v. Johnson, 255 F.3d 229, 239 (5th Cir. 2001)); Manning v.

Warden, Claiborne Parish Detention Center, Civ. Action No. 3:12–cv–2753, 2013 WL 596348, *5

n.3 (W.D. La. Jan. 22, 2013) (petitioner's claim of inadequate inmate counsel did not warrant

equitable tolling), adopted, 2013 WL 596345 (Feb. 15, 2013), aff'd, Manning v. Sumlin, 540 F.

App'x 46 (5th Cir. 2013) (per curiam).

Petitioner's 23-hour confinement also does not constitute rare or exceptional circumstances

warranting equitable tolling.  Madis v. Edwards, 347 F. App'x 106, 108 (5th Cir. 2009) (finding

transfers between units, separation from legal materials, and administrative segregation are not

rare or exceptional circumstances meriting equitable tolling); see also Dodd v. United States, 365

F.3d 1273, 1283 (11th Cir. 2004) ("Lockdowns and periods in which a prisoner is separated from

his legal papers are not 'exceptional circumstances' in which equitable tolling is appropriate.").

The Court is not aware of any other circumstance in this case that might warrant equitable tolling.

Therefore, there is no basis for finding that the limitations period should be equitably tolled.

Lastly, the Court also notes that the United States Supreme Court has held: "[A]ctual

innocence, if proved, serves as a gateway through which a petitioner may pass whether the

impediment is a procedural bar ... or, as in this case, expiration of the statute of limitations."

McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013).  Here, petitioner does not argue that the

instant case falls within the parameters of McQuiggin.  However, because he references "material,

11

exculpatory evidence was not disclosed to defense prior to trial" which he opines casts doubts on

his guilt, the Court will consider McQuiggin's applicability.

In McQuiggin, the Supreme Court expressly cautioned: "[T]enable actual-innocence

gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades

the district court that, in light of the new evidence, *no juror*, acting reasonably, would have voted

to find him guilty beyond a reasonable doubt.' " Id. at 1928 (emphasis added) (quoting Schlup v.

Delo, 513 U.S. 298, 329 (1995)).  Further, as the United States Sixth Circuit Court of Appeals has

explained:

> To assess that question, a court must survey "all the evidence, old and new,
> incriminating and exculpatory, without regard to whether it would necessarily be
> admitted under rules of admissibility that would govern at trial."  House v. Bell,
> 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (internal quotation
> marks omitted).  With "all the evidence" thus in mind, the court's final task is "to
> assess the likely impact of the evidence on reasonable jurors"; it is not to work
> through an "independent factual determination" to divine "what likely occurred."
> Id. (internal quotation marks omitted).

Eberle v. Warden, Mansfield Correctional Institution, 532 F. App'x 605, 613 (6th Cir. 2013);

accord Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *2-3 (E.D. La. July 27,

2015), aff'd, 667 F. App'x 474 (5th Cir. 2016), cert. denied, 137 S. Ct. 1105 (2017); Lyles v.

Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014).

A logical starting point, therefore, is to look at the "old" evidence, i.e. the evidence existing

and known at the time of petitioner's trial.  That evidence is recounted in the Louisiana First Circuit

Court of Appeal's summary of the facts of this case on direct appeal:

> When the victim, K.A., was eleven years old, she began communicating
> with the defendant while visiting a website called vampirefreaks.com, a website
> described by the victim as a Facebook for outcasts.[2]  The defendant told the victim
> that he was eighteen years old and the victim represented her age as fourteen on her
> profile page.  At some point, while the victim was still eleven years old, the
> defendant and the victim made arrangements to meet in person.  As planned, during

the middle of the night, the victim met the defendant down the block from her home in Abita Springs, Louisiana, and got into his vehicle.  The defendant had sexual intercourse with the victim when he parked at a recreational vehicle (RV) park.  The victim did not remember consenting to the act and testified that it made her feel awkward and uncomfortable.  The victim asked the defendant to take her home and he complied.

[2]The victim's date of birth is August 22, 1998.  In this opinion, the victim will be referenced by initials only.  See LSA–R.S. 46:1844(W).

The victim continued to interact with the defendant on the website and, in April of 2010, texted the defendant to inform him that she wanted to go to Orlando, Florida to visit another male with whom she had been interacting on the website. The defendant told the victim that he would take her to Florida and agreed to meet the victim in the middle of the night.  The victim packed a bag of her belongings and, accompanied by her nephew of the same age (the son of the victim's much older sister), met the defendant near her home.  The victim's nephew did not want the victim to leave with the defendant and tried to talk her out of it.  When the defendant arrived, the victim's nephew informed him that the victim was only eleven years old and could not make decisions on her own.

While the defendant still drove away with the victim, her nephew partially memorized the license plate of the vehicle in which they were travelling and went back to his grandmother's home to alert his family.  The defendant took the victim to Mississippi and while pulled over in a strip mall parking lot, had sexual intercourse with her again.  The defendant then drove to a gas station, gave the victim some money, and instructed her to go in and buy a bag of chips and a soda. The victim complied, and when she came out of the store, the defendant was gone. She ultimately contacted her father, and her parents took her to the police station. The victim was also taken to the hospital and to the Children's Advocacy Center, where she was interviewed.

The police were able to identify the defendant's vehicle with the partial license plate information, used the vehicle's Onstar system to disable it, and located the defendant in Slidell, Louisiana.  The defendant's laptop computer and hard drive were seized and searched during the execution of search warrants by the police.  During the trial, the defense stipulated that images obtained from the computer contained child pornography.[28]

The foregoing "old" evidence was obviously compelling evidence of guilt, and so

petitioner would face a daunting burden to present a credible "actual innocence" claim.

Specifically, the United States Supreme Court has explained: "To be credible, such a claim

---

[28] Spiehler, No. 2012 KA 0129, 2012 WL 4335872, at *1-2; State Rec. Vol. 4 of 9, 1st Cir. Order, 2012 KA 0129, pp. 2-4, 9/21/12.

requires petitioner to support his allegations of constitutional error with new reliable evidence —

*whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical*

*evidence* — that was not presented at trial.  Because such evidence is obviously unavailable in the

vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S.

298, 324 (1995) (emphasis added).

The only new evidence petitioner suggests exists to support his claim of actual innocence

is a homemade journal referred to in an April 24, 2010 police report.[29]  According to the police

report, the journal included "several entries about a male named John, possibly last name of Van,

that lived in Florida.  In the writings, [the victim] told how she loved John and planned to loose

[sic] her virginity to him when she met him."[30]  The police did not confiscate the journal; rather,

the report indicated that Deputy Nielson advised the victim's mother to keep the journal in a safe

location as it may be useful later in the investigation.[31]

Petitioner claims that the journal entries refute the victim's testimony that petitioner raped

her in February 2010.  There is no evidence, however, regarding the dates of entries in the journal.[32]

Therefore, even assuming that the journal entries were admissible, there is no evidence that the

victim wrote the entries after February 2010 when the rape occurred.  Regardless, although the

defense might have been able to cast some doubt about the victim's testimony that petitioner raped

her in February 2010, a petitioner does not make a colorable "actual innocence" claim simply by

showing that, in light of his new evidence, his guilt is questionable or that "reasonable doubt is

---

[29] Petitioner does not contend that the police report is "newly discovered evidence."  Petitioner's trial counsel admitted that he had received the police report prior to trial.  Trial counsel testified that it was his belief that the journal would not be admissible under the rape shield statute.  State Rec. Vol. 6 of 9, Evidentiary Hearing Transcript, pp. 10-13, 7/23/15.

[30] Rec. Doc. 1, pp. 24-25.  .

[31] Id., at p. 25.

[32] As of July 23, 015, the journal had not been located.  State Rec. Vol. 6 of 10, Evidentiary Hearing Transcript, pp. 16-17, 20.

conceivable." Costagno v. Grady, Civ. Action No. 12–3333, 2013 WL 3811201 (E.D. Pa. July 23, 2013); Bastien v. Dragovitch, 128 F. Supp. 2d 204, 211 (M.D. Pa.2000). Evidence which merely casts some doubt on a guilty verdict is therefore insufficient. Rather, as previously indicated, to warrant application of the "actual innocence" exception, a petitioner must bring forth colorable evidence that he did not in fact commit the crime of which he stands convicted, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." See Schlup, 513 U.S. at 324.

Here, petitioner presents no "new" evidence whatsoever showing that he is factually innocent of the crimes of which he stands convicted, much less any evidence of the type or caliber referenced in Schlup. Therefore, he has not met "the threshold requirement" for McQuiggin to apply, i.e. a showing that "in light of the new evidence, *no juror*, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup, 513 U.S. at 329; emphasis added). Accordingly, McQuiggin does not aid him.

Because petitioner is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that the McQuiggin "actual innocence" exception applies, his federal application for habeas corpus relief had to be filed no later than October 22, 2013, in order to be timely. His federal application was not filed until April 27, 2016, and, therefore, it is untimely.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Christopher M. Spiehler be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n,

79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[33]

New Orleans, Louisiana, this first day of September, 2017.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE

---

[33] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.